O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
|  | Case No. 2:15-CV-02789 (VEB) |
| RIZWANA BHATTI, | |
| Plaintiff, | DECISION AND ORDER |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

In January of 2011, Plaintiff Rizwana Bhatti applied for Supplemental Security Income ("SSI") benefits under the Social Security Act. The Commissioner of Social Security denied the application.

Plaintiff, by and through her attorney, Andrew Koenig, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 9, 18). On March 16, 2016, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 21).

## II. BACKGROUND

Plaintiff applied for SSI benefits on January 14, 2011, alleging disability beginning March 15, 2005, due to several physical and mental impairments. (T at 146-47, 162).[1]  The application was denied initially and on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On June 4, 2013, a hearing was held before ALJ Dale A. Garwal. (T at 40). Plaintiff appeared with a non-attorney representative and testified. (T at 43-55).  The ALJ also received testimony from Sharon Spaventa, a vocational expert (T at 56-58).

On July 24, 2013, the ALJ issued a written decision denying the application for benefits.  (T at 19-37).  The ALJ's decision became the Commissioner's final

---

[1] Citations to ("T") refer to the administrative record at Docket No. 13.

decision on February 25, 2015, when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

On April 15, 2015, Plaintiff, acting by and through her counsel, filed this action seeking judicial review of the Commissioner's denial of benefits. (Docket No. 1). The Commissioner interposed an Answer on November 13, 2015. (Docket No. 12).  The parties filed a Joint Stipulation on March 8, 2016. (Docket No. 20).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision must be reversed and this case remanded for calculation of benefits.

## III. DISCUSSION

**A.    Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot,

considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s) with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.      Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner]  may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.   Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 14, 2011, the application date. (T at 24). The ALJ found that Plaintiff's degenerative disc disease of the back; degenerative disc disease of the neck; dry eye syndrome; and mild depression were "severe" impairments under the Act. (Tr. 24).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 24).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 416.967 (b), as follows: she can lift/carry 20 pounds occasionally and 10 pounds frequently; stand for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally bend or stoop; and cannot perform work that involves hazardous conditions. (T at 25).

The ALJ noted that Plaintiff had no past relevant work. (T at 31).  Considering Plaintiff's age (41 years old on the application date), education (at least high school), work experience (no past relevant work), and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T at 31).

Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act between January 14, 2011 (the application date) and July 24, 2013 (the date of the decision) and was therefore not entitled to benefits. (T at 32). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

**D.    Disputed Issues**

As set forth in the Joint Stipulation (Docket No. 20, at p. 2), Plaintiff offers four (4) main arguments in support of her claim that the Commissioner's decision should be reversed.    First, she argues that the ALJ improperly discounted assessments from treating and examining physicians.    Second, she challenges the ALJ's RFC determination.    Third, Plaintiff argues that the ALJ erred by rejecting third party evidence.     Fourth, Plaintiff challenges the ALJ's credibility determination.    This Court will address each argument in turn.

# IV. ANALYSIS

**A.    Medical Opinion Evidence**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons

9

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The courts have recognized several types of evidence that may constitute a specific, legitimate reason for discounting a treating or examining physician's medical opinion. For example, an opinion may be discounted if it is contradicted by the medical evidence, inconsistent with a conservative treatment history, and/or is based primarily upon the claimant's subjective complaints, as opposed to clinical findings and objective observations. *See Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.*

The record in this case contains opinions from several physicians. This Court will summarize those opinions and then address the ALJ's consideration of the opinion evidence.

1      **1.       Dr. Kangwenpornsiri**

2      On March 19, 2013, Dr. Atipon Kangwenpornsiri, an examining physician,

3  completed a Certification of Disability form.   Dr. Kangwenpornsiri opined that

4  Plaintiff was "unable to work" due to the severity of her headaches, nausea, and

5  vomiting. (T at 412).

6      **2.       Dr. Haas**

7      Dr. Maureen Haas, a treating physician, completed a Physical Residual

8  Functional Capacity Questionnaire on May 29, 2013.   She reported that Plaintiff was

9  not a malingerer and opined that Plaintiff's experience of pain and other symptoms

10  was severe enough to interfere with attention and concentration 24 hours per day. (T

11  at 456).   Dr. Haas assessed a severe limitation with regard to Plaintiff's ability to

12  deal with work stress and estimated the following functional limitations:

13  sitting/standing limited to 10 minutes at a time and no more than 2 hours in an 8-

14  hour work day. (T at 457).   She concluded that Plaintiff would need to shift positions

15  all day long and would need to take unscheduled breaks 4 times an hour. (T at 457-

16  58).   Dr. Haas noted that Plaintiff needed a cane or assistive device when walking or

17  standing.   She opined that Plaintiff could occasionally lift/carry less than 10 pounds,

18  but never more than that, and would have significant limitation with regard to

19  reaching. (T at 458).

20

Dr. Haas reported that could not bend or twist, was likely to have "good days" and "bad days," and would likely miss work more than three times per month due to her impairments or treatment. (T at 459).  Dr. Haas explained that these limitations had existed since Plaintiff was injured in a motor vehicle accident on January 27, 2012. (T at 459).

### 3.        Dr. Lagattuta

Dr. Francis Lagattuta, a treating physician, wrote a letter dated March 7, 2013, in which he explained that Plaintiff was being treated for knee osteoarthritis, lumbar spondylosis, and lumbar radiculopathy. (T at 413).  He explained that Plaintiff was "temporarily disabled" and was unable to sit, stand, or walk for prolonged periods. (T at 413).  He also noted that Plaintiff had limited range of motion. (T at 413).

### 4.        Dr. Price

Dr. Michael Price, another treating physician, completed a physical capacities assessment in February of 2013.  Dr. Price opined that Plaintiff could lift/carry a maximum of 3 pounds and never climb, stoop, kneel, crouch, crawl, or reach. (T at 444).

### 5.        Dr. Siekerkotte

In May of 2011, Dr. Birgit Siekerkotte completed a consultative examination. Dr. Siekerkotte diagnosed back pain and degenerative joint disease, lower abdominal

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

pain, vision problems, difficulty concentrating, anxiety, and learning disability. (T at 348). Dr. Siekerkotte opined that Plaintiff could sit/stand/walk for up to 6 hours, lift 20 pounds occasionally and 10 pounds frequently, and climb/balance/stoop/kneel/crouch/crawl occasionally. (T at 348). He also concluded that Plaintiff could handle and reach frequently and would be limited from working at heights or with heavy machinery. (T at 349).

### 6.   State Agency Review Physicians

Dr. M. Ormsby, a non-examining State Agency review physician, rendered an opinion in June of 2011. Dr. Ormsby concluded that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk/sit for about 6 hours in an 8-hour workday, occasionally climb ramps and stairs, occasionally kneel, balance, crouch, and crawl, but never climb ladders, ropes, or scaffolds. (T at 79-80). Dr. D. Chan, another non-examining State Agency review physician, made essentially the same findings in April of 2012. (T at 91-93).

### 7.   ALJ's Consideration of the Evidence

The ALJ afforded significant weight to the opinion of Dr. Siekerkotte, the consultative examiner (T at 28) and credited the opinions of the State Agency review physicians. (T at 30). The ALJ gave "little to no weight" to the assessments of three treating physicians: Dr. Lagattuta, Dr. Haas, and Dr. Price. (T at 29-30). The ALJ

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

did not discuss the opinion of Dr. Kangwenpornsiri at all.  For the following reasons, this Court finds the ALJ's consideration of the medical opinion evidence flawed and not supported by substantial evidence.

First, the ALJ erred by failing to discuss the opinion of Dr. Kangwenpornsiri. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Second, the ALJ gave great weight to the opinion of Dr. Siekerkotte, as opposed to the assessments of the treating physicians (Haas, Lagattuta, and Price), without accounting for the fact that the latter group treated Plaintiff after her most recent motor vehicle accident (which occurred on January 27, 2012), while Dr. Siekerkotte examined Plaintiff prior to that accident.  Dr. Haas, in particular, linked an aggravation in the severity of Plaintiff's limitations to that accident. (T at 459).  It is not clear that the ALJ considered this timing issue when weighing the medical opinions.

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

1    Third, the ALJ suggested that the treating physicians had engaged in implicit

2   "advocacy" and accused them of overreliance on Plaintiff's subjective complaints.

3   (T at 29-30).  However, "[t]he purpose for which medical reports are obtained does

4   not provide a legitimate basis for rejecting them" unless there is additional evidence

5   demonstrating impropriety, and the ALJ identified no such evidence. *Lester v.*

6   *Chater*, 81 F.3d 821, 832 (9th Cir. 1995).  Moreover, "when an opinion is not more

7   heavily based on a patient's self-reports than on clinical observations, there is no

8   evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162

9   (9th Cir. 2014).  Indeed, "a patient's complaints or reports of [her] complaints, or

10   history, is an essential diagnostic tool." *Williams v. Colvin*, 13-03005, 2014 U.S.

11   Dist. LEXIS 6244, at *33 (E.D.Wa. Jan. 15, 2004).

12    Fourth, the ALJ's characterization of the treatment history is not accurate.

13   For example, the ALJ states that Plaintiff's shoulder complaints were only

14   documented since January 2013 (T at 30), when in fact shoulder pain was reported

15   in a physical therapy note from November of 2011. (T at 384).  Plaintiff was referred

16   to several rounds of physical therapy and pain management, with mixed results. (T

17   at 333, 312-15, 321-23, 377-90, 366-76, 398-403, 446-48, 442-43).  Moreover,

18   although the ALJ referenced some evidence of improvement over the course of time,

19   the ALJ did not adequately address evidence indicating that Plaintiff's impairments

20

1   were materially aggravated following her January 2012 car accident. (T at 398, 407-

2   410, 465, 404-06, 468-69).

3   **B.   RFC**

4      The ALJ determined that Plaintiff retained the RFC to perform light work as

5   follows: she can lift/carry 20 pounds occasionally and 10 pounds frequently; stand

6   for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally

7   bend or stoop; and the work cannot involve hazardous work conditions. (T at 25).

8      The ALJ failed to include any limitation with regard to reaching, handling, or

9   fingering and did not indicate that Plaintiff needed a cane for balance. (T at 25).

10  However, Dr. Siekerkotte, the consultative examiner whose opinion the ALJ gave

11  "significant weight," concluded that Plaintiff was limited to frequent reaching,

12  handling, or fingering and needed a cane for balance. (T at 348-49).  These findings

13  were significant and consistent with the conclusions of Dr. Haas (who noted the

14  need for a cane – T at 458) and Dr. Price (who assessed significant limitations as to

15  reaching – T at 444).

16     If the ALJ had offered an explanation as to why these aspects of Dr.

17  Siekerkotte's opinion were not incorporated into the RFC, and if that explanation

18  was supported by substantial evidence, this Court would be bound to defer to that

19  assessment.   However, the ALJ failed to offer any such explanation.   The

20

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

Commissioner suggests that the ALJ implicitly relied on the State Agency physician assessments, which did not include any such limitations.  However, the opinion of a non-examining, State Agency physician does not, without more, justify the rejection of an examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)(citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).  Moreover, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r*, 554 F.3d 1219, 1226 (9th Cir. 2009).

In addition, Dr. Sierkerkotte also noted vision problems and difficulty concentrating, anxiety, and a learning disability. (T at 345).  Again, these findings were significant as they were consistent with other evidence of record – for example, Dr. Haas opined that Plaintiff's pain and other symptoms were severe enough to constantly interfere with her attention and concentration. (T at 456).  The ALJ recognized that Plaintiff had "some limitations" with regard to her vision (T at 28), as indicated by Dr. Sierkerkotte, but then failed to define those limitations or include any vision limitations in the hypothetical questions presented to the vocational expert. (T at 56-58).

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

1    For the foregoing reasons, this Court finds that the ALJ's RFC determination

2  cannot be sustained.

3  **C.    Lay Evidence**

4    "Testimony by a lay witness provides an important source of information

5  about a claimant's impairments, and an ALJ can reject it only by giving specific

6  reasons germane to each witness." *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th

7  Cir. 1999).

8    In this case, Akhther Bhatti, Plaintiff's husband, completed a Third Party

9  Function report, dated April 9, 2012.  Mr. Bhatti explained that he helps Plaintiff in

10  the shower and stated that Plaintiff has difficulty grooming, bathing, cooking, and

11  using the toilet. (T at 171-72).  She has trouble remembering to take her medication.

12  (T at 172).  She can perform limited household chores for short periods of time. (T at

13  172).  Mr. Bhatti estimated that Plaintiff could not lift more than 5 pounds or walk

14  more than 1 or 2 blocks without pain, and explained that she has problems with

15  comprehension.  (T at 175).  He stated that Plaintiff becomes frustrated under stress

16  and has difficulty with changes in routine. (T at 176).  She needs a cane. (T at 176).

17    The ALJ gave "little weight" to Mr. Bhatti's statement on the grounds that the

18  "statements of the reviewing physicians and mental health professionals [were] more

19  objective and less likely to be influenced by sympathy for [Plaintiff] or other

20

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

emotional factors." (T at 26).  This finding is problematic in two respects.  First, Mr. Bhatti's statement was actually quite consistent with the opinions of Plaintiff's treating physicians, which the ALJ did not properly consider for the reasons outlined above.

Second, a family lay witness has valuable insights to offer because of their frequency of contact with the claimant. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").

It is thus improper to discount such evidence purely because the witness is (a) a lay person and (b) a family member.  In other words, the ALJ's decision to reject Mr. Bhatti's report because he is related to Plaintiff and is not a medical professional begs the question.  The evidence is, by its nature, lay evidence from a family member.  To describe it as such is not a reason to reject it.  If it was valid, all evidence of this type would be rejected on this ground *ipso facto*, which is clearly contrary to the Regulations requiring careful consideration of this valuable information.  *See* 20 CFR § 404.1513 (e)(2); SSR 88-13; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.").

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

The ALJ's consideration of Mr. Bhatti's report cannot be sustained for the reasons outlined above.

**D.     Credibility**

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, Plaintiff testified as follows:  She no longer drives due to difficulty focusing and concentrating.  (T at 44).  She has back and neck pain, which have been treated with various therapies, pain management injections, and prescription medication. (T at 45-46, 49).  She is in constant, severe pain. (T at 46). Vision problems make reading difficult. (T at 47).  Migraine headaches are a problem four or five times per week. (T at 47).  She does not perform any housecleaning or cooking. (T at 48).

She was involved in a series of motor vehicle accidents (2004, 2010, and 2012). (T at 48).  The most recent accident, which occurred in January 2012, involved a high speed crash, and injuries to Plaintiff's back, legs, knees, shoulders, neck, and head. (T at 49).

Plaintiff was educated in Pakistan and has some difficulty with the English language. (T at 51).  She can sit in a chair for about 10 minutes before experiencing pain throughout her body. (T at 52).  She would then need to lie down for more than 30 minutes. (T at 53).  Lifting is limited to less than five pounds. (T at 53).  When experiencing a headache, she has severe pain and nausea and needs to lie down in a cool, dark room. (T at 55).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

1   regarding the intensity, persistence, and limiting effects of the symptoms were not

2   fully credible. (T at 26).

3        For the reasons that follow, this Court finds that the ALJ's credibility

4   determination cannot be sustained.

5        First, the ALJ concluded that the medical record was not consistent with

6   Plaintiff's subjective complaints.  However, "[t]he fact that a claimant's testimony is

7   not fully corroborated by the objective medical findings, in and of itself, is not a

8   clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044,

9   1049 (9th Cir. 2001); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th

10  Cir. 2006) ("While an ALJ may find testimony not credible in part or in whole, he or

11  she may not disregard it solely because it is not substantiated affirmatively by

12  objective medical evidence."); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.

13  1986) ("It is improper as a matter of law to discredit excess pain testimony solely on

14  the ground that it is not fully corroborated by objective medical findings.").

15  Moreover, Plaintiff's testimony was generally consistent with the findings of her

16  treating physicians.  As discussed above, the ALJ did not adequately address the

17  treating physician opinions, which thus impacted the credibility assessment.

18       Second, the ALJ found Plaintiff's activities of daily living contradicted her

19  claims.  However, Plaintiff's statements were that these activities were rather limited

20

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

1   (cooking, light chores) and performed infrequently and with assistance.  (T at 55,

2   185, 346, 355).  In addition, the evidence was that Plaintiff's activities of daily living

3   became much more limited following her January 2012 accident, which sharply

4   increased her neck and back pain. For example, a March 2012 physical therapy

5   status report described Plaintiff as having trouble performing household chores and

6   unable to sit longer than 15 minutes. (T at 368).

7      Moreover, the Ninth Circuit "has repeatedly asserted that the mere fact that a

8   plaintiff has carried on certain daily activities ... does not in any way detract from

9   her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

10  2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).  "The

11  Social Security Act does not require that claimants be utterly incapacitated to be

12  eligible for benefits, and many home activities are not easily transferable to what

13  may be the more grueling environment of the workplace, where it might be

14  impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597,

15  603 (9th Cir. 1989).

16     Recognizing that "disability claimants should not be penalized for attempting

17  to lead normal lives in the face of their limitations," the Ninth Circuit has held that

18  "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed

19  limitations would these activities have any bearing on [her] credibility." *Reddick v.*

20

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

*Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(citations omitted); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).

For the foregoing reasons, this Court finds that the ALJ's credibility assessment cannot be sustained.

**E.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB

1    In contrast, an award of benefits may be directed where the record has been

2    fully developed and where further administrative proceedings would serve no useful

3    purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).   Courts have

4    remanded for an award of benefits where (1) the ALJ has failed to provide legally

5    sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that

6    must be resolved before a determination of disability can be made, and (3) it is clear

7    from the record that the ALJ would be required to find the claimant disabled were

8    such evidence credited. *Id.* (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th

9    Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of*

10   *Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)).

11   In this case, this Court finds that the ALJ failed to provide legally sufficient

12   reasons for rejecting evidence, including assessments from multiple treating

13   physicians, all of whom assessed disabling limitations; there are no outstanding

14   issues that must be resolved before a determination of disability can be made; and it

15   is clear from the record that the ALJ would be required to find the claimant disabled

16   were such evidence credited.

17   The Ninth Circuit has held that it is not appropriate to "remand for the purpose

18   of allowing the ALJ to have a mulligan." *Garrison v. Colvin*, 759 F.3d 995, 1012,

19   1021 (9th Cir. 2014).   Indeed, "[a]llowing the Commissioner to decide the issue

20

again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). Moreover, "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Id.* (quoting *Varney v. Sec'y of Health & Human Srvc.*, 859 F.2d 1396, 1398 (9th Cir. 1987)).

## V. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this action for calculation of benefits, and it is further ORDERED that

The Clerk of the Court shall CLOSE this case, without prejudice to a timely application for attorneys' fees and costs.

DATED this 6th day of September, 2016.


/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – BHATTI v COLVIN 2:15-CV-02789-VEB